JACKSON *v.* FIRST NATIONAL BANK OF EL DORADO.

4-4940

Opinion delivered February 14, 1938.

*George H. Holmes* and *W. A. Speer,* for appellants. *Mahony & Yocum,* for appellee.

MEHAFFY, J. The appellants owned 240 acres of land in Union county, Arkansas, on which they lived and had

farmed part of it since 1898 and the balance of it since 1902. Appellants were indebted to the appellee, and, on February 1, 1934, executed a deed of trust to appellee covering their lands, and several items of personal property, to secure two promissory notes, aggregating $1,375.30, which they had executed to appellant bank due and payable November 7, 1934, with interest from maturity until paid.

On September 16, 1935, the appellee filed suit in the Union chancery court to foreclose the deed of trust, alleging said indebtedness and also an additional note of J. E. Jackson to appellee, on which W. E. Jackson had become obligated by signing as security, making a total indebtedness of principal in the sum of $1,292.30, together with interest, and prayed judgment for said sum, and that said property be sold and applied toward the satisfaction of the judgment, interest and costs.

Appellants allege that at the time the foreclosure suit was filed, they were informed by appellee that the notes were due and that they must foreclose in order to keep their record clear, but that appellee did not want the land and that at any time appellants could pay the indebtedness, they could get the land back.

On November 4, 1935, a decree was rendered for the sum of $1,420.95 with interest and costs. It was further decreed that the deed of trust be foreclosed and the lands described and the personal property be sold to the highest bidder on a credit of three months, if said judgment was not paid within 30 days.

Ruth Williams was appointed commissioner to make the sale. The property was sold on December 28, 1935.

It was alleged that the sale was void because the lands were not properly described in the notice of sale. On January 6, 1936, the sale was confirmed. The appellants alleged that the sale made by the commissioner was fraudulent, unjust, inequitable, and for a grossly inadequate price. There were some other allegations of fraud.

Attached to appellants' complaint was a copy of the complaint filed in the foreclosure suit, a copy of the

original notice of sale, a list of the personal property, copy of proof of publication, copy of report of sale.

Appellee filed answer in which it denied each and every allegation of the complaint, and stated that each of the appellants was summoned in the foreclosure suit, and in addition thereto a representative of the appellee conferred with them concerning the suit prior to the confirmation of the sale; that appellants did not answer in the foreclosure suit, and further alleged that the appellants voluntarily surrendered possession of the property, and that W. E. Jackson rented the lands from appellee for the years 1936 and 1937.

The evidence on the part of appellants tended to show that before the foreclosure sale they had an agreement with appellee that they could redeem the property at any time they paid the debt. Many conversations are testified about, which it was alleged were had with the officials of the bank, and that appellants were constantly told that they had a right to redeem; that because of this agreement no defense was made to the suit or to the confirmation. The testimony showed that W. E. Jackson, one of the appellants, owned 240 acres; that his home was on 160 acres of this property; he had lived there for years. He testified about the condition and value of the land, and at length about the agreement with the appellee. Portions of his testimony were corroborated by other witnesses.

Appellee offered no evidence. It is true it filed an answer denying the allegations of the complaint, but the answer was not verified.

At the close of appellants' testimony, the appellee moved the court to dismiss the case for want of equity. The court, in sustaining this motion, among other things said: "If this matter had been called to the court's attention at the time we would not have confirmed the sale. He was charged with the same responsibility then. The court takes judicial knowledge of how these things are brought up before the court, and it is on rare occasions that the successful party is present. We would have had a resale of this property. We never did ap-

prove of advertising a sale of land that is located in the extreme west of the county in a newspaper that is published in the extreme east of the county. In this case the land is located in the west end of the county, and the notice of sale of that land was sent to a newspaper in east end of the county, a newspaper the circulation of which does not reach the people living near this land. I do not think there is any use in publishing it at all if the people interested in the land are not going to see the notice, or see the paper it is published in. The term has elapsed. I do not think you have made any showing, and that will be the order of the court.''

Appellants contend that they had a contract, or an agreement, with appellee that they could redeem the land at any time. Relying on this contract, they did not pay any attention to irregularities of the publication of the notice of sale, the sale of the land, or any matter connected with the foreclosure. This evidence is not disputed. If they made this contract, as the testimony of appellants shows they did, and shows that it was made before their right of redemption expired, this contract is enforceable. The time given was indefinite, but appellants still occupied the land, and the evidence shows that there were numerous conversations about the redemption, and if the contract was made, as contended for by the appellants, then appellee could not arbitrarily abrogate this agreement and refuse to permit redemption without giving the appellants notice and a reasonable opportunity to comply with their contract.

Many authorities hold that contracts of this character, if made prior to the time that redemption expires, although oral, are enforceable. In Hughes on Arkansas Mortgages, p. 412, it is said: ''Foreclosure does not always bar the equity of redemption. The parties may, by agreement, express or implied, keep it alive. If by any agreement of the parties, whatever its form may be, the debt in fact still continues to exist after foreclosure, the equity of redemption is let in again.''

In this case both parties probably knew about the irregularities, but the appellants owed the debt, they did

not deny this, and did not try to avoid the payment; but according to their testimony, the bank was given the right to foreclose without regard to any irregularities because of the agreement to permit appellants to redeem; that is, permit them to pay the debt and retain the property. But for the discovery of oil, appellants would probably have been unable to redeem, and it is also probable that but for this discovery, the appellee would have been willing to permit redemption. The evidence on the part of the appellants shows not only that this agreement was made and that he had many conversations with the cashier of the bank, but also shows that immediately before this suit was filed, the cashier of the bank told appellant that the bank had, the day before, decided not to permit appellant to redeem. This evidence is not disputed. The parties had a right to make any sort of agreement they wished to make, and whether the appellee agreed directly or indirectly to permit the parties to occupy the land and make redemption, this contract would be enforceable.

It is not material how the agreement was made. Here the statement is that it was a direct and positive agreement, but an agreement might be implied from the acts and conduct of the parties and have the same effect.

"Redemption may be had after foreclosure if the mortgagee or other holder of the title recognizes the mortgage as a continuing obligation. Thus where the owner of a farm mortgaged it to a bank to secure a loan, and afterward the bank foreclosed the mortgage, and obtained the title under a decree of strict foreclosure, but the mortgagor still continued to make, and the bank to receive, payment on the mortgage debt, such payments had the effect to rehabilitate the mortgagor with the right to redeem as fully as if the decree of foreclosure had never been made. Where the mortgagee either directly or indirectly receives a part of the mortgage debt after the time for redemption has expired, the mortgagor may redeem upon payment of the balance due. In case of doubt as to the continued existence of the right

to redeem, the law will generally resolve the doubt in favor of the mortgagor and allow redemption." Vol. 2, Jones on Mortgages, 804.

In the foreclosure of mortgages, the parties may make a contract permitting the mortgagor to pay the debt, and this contract may be either express or implied. If there was a contract in this case, it is enforceable. What steps, if any, the appellants would have taken if the agreement had not been made is not disclosed. We said in a recent case: "What steps she would have taken, or what course she would have pursued if the agreement had not been made, is not disclosed. She might have resisted the foreclosure, or she might have appealed, or she might have procured bidders for the property at the foreclosure sale in order to protect herself. At any rate, it was an agreement the parties had a right to make." *Pfeiffer* v. *Missouri State Life Ins. Co.,* 177 Ark. 1013, 8 S. W. 2d 505.

In the instant case appellants might have resisted the foreclosure or might have objected to the confirmation, or might have secured other persons to bid. It appears from the finding of the court that there was no notice of the sale as required by law. If there had been, there might have been other bidders.

The question here is whether a contract, as contended by appellants, was made. The court, therefore, erred in granting appellee's motion to dismiss.

The decree of the chancery court is reversed, and the cause is remanded with directions to overrule appellee's motion to dismiss, and to determine the question whether there was an agreement, and on this question the court may permit parties to introduce evidence.